acknowledges that there are times when crossing an active highway is entirely unsafe, and that safer alternatives are sometimes available. Yet it allowed its employees to exercise unfettered discretion on when to cross on foot and never offered adequate guidance about how and when to do so.

As both sides note, the decedent, Wolfe, was an experienced highway worker with a history of sound judgment. The fact that he attempted to cross a road, as he and other employees had done in the past, in the face of credible testimony by two witnesses that doing so at the time was not safe, suggests that the dangers inherent in crossing an active roadway were not so obvious that employees would not have benefitted from systematic instruction.

This was not a freak accident, but one that could have been prevented with adequate guidance about when the crossing of the highway should not be attempted and when alternative means of crossing the road should be employed. As the Commission noted, the record reflects "at best, an inadequate and superficial treatment of a serious hazard." *Fairfield II*, at *4. The Commission did not act arbitrarily or capriciously in finding that the hazard of crossing active roadways was not so obvious as to eliminate Fairfield's duty to institute a safety program and training about it.

**AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0108P (6th Cir.)
File Name: 02a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

W.G. FAIRFIELD COMPANY,
　　　　　　*Petitioner,*

　　　v.　　　　　　　　　　　No. 00-4548

THE OCCUPATIONAL SAFETY
& HEALTH REVIEW
COMMISSION; SECRETARY OF
LABOR,

　　　　　　*Respondents.*

On Petition for Review of an Order of the Occupational Safety & Health Review Commission.
No. 99-0344.

Argued: March 7, 2002

Decided and Filed: April 3, 2002

Before: MOORE, COLE, and FARRIS, Circuit Judges.[*]

———————

**COUNSEL**

**ARGUED:** Maureen P. Taylor, BRICKER & ECKLER, Columbus, Ohio, for Petitioner. Ronald J. Gottlieb, UNITED

———————

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents. **ON BRIEF:** Maureen P. Taylor, Michael S. Holman, BRICKER & ECKLER, Columbus, Ohio, for Petitioner. Ronald J. Gottlieb, Ann Rosenthal, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents. Roger L. Sabo, John J. Krimm, Jr., SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Amicus Curiae.

_____

## OPINION

_____

FARRIS, Circuit Judge. W.G. Fairfield argues that the Occupational Safety and Health Review Commission acted arbitrarily or capriciously by affirming a citation for violating two Occupational Health and Safety Act regulations. We affirm.

**I**

There are no disputed facts. Digging a trench beside a six-lane stretch of I-71 in Ohio, a highway construction crew of Fairfield employees unexpectedly struck a cable. To see if the cable had been pulled loose, one of the workers, Floyd Wolfe, walked across the three northbound lanes of the interstate to inspect a junction box located at the median. Unable to trace the cable, he then attempted to cross the three southbound lanes, was struck by a car, and sustained fatal injuries.

None of the interstate's lanes had been closed for the project and there was no flagman to direct or stop traffic, but signs had been placed on the northbound side of the interstate to warn approaching motorists, who were traveling at an average rate of 70 miles per hour, that work was being performed on the northbound shoulder. There were no signs indicating work being done on the median or on the southbound lanes.

sure you watch out for that car because its driver may not be watching you"; "Make sure that you always know where you are and where the traffic is so that you don't accidentally end up in an active lane." Fairfield contends that it should not be further required to train employees "not to do what no reasonable person would ever do," i.e., cross in front of rapidly moving vehicles. It likens instructions on such obvious hazards to two rulings in which the Fifth Circuit struck down requirements to place railings around flat roofs: *Diamond Roofing Co. v. OSHRC*, 528 F.2d 645 (5th Cir. 1976), and *R.L. Sanders Roofing Co. v. OSHRC*, 620 F.2d 97 (5th Cir. 1980).

In *Diamond Roofing*, the court found that the Secretary could not use a regulation requiring railing around *floors* to apply to roofs. In dictum, the court noted that the roofing industry covers or guards roof holes but not roof perimeters because falling off "is an obvious danger of which roofers are highly conscious." *Diamond Roofing*, 528 F.2d at 650. In *R.L. Sanders*, the court found that the Secretary could not use the General Duty Clause to require a railing around flat roofs because, among other things, a specific regulation required a railing only around roofs pitched a certain degree. In dictum, the court noted that "[i]f the Secretary is concerned about employees' falling from the edge of a flat roof, he should promulgate a regulation that specifically addresses that hazard rather than seek to impose liability on employers under the general duty clause for failure to protect against it." *R.L. Sanders*, 620 F.2d at 100.

*Diamond Roofing* and *R.L. Sanders* are inapposite. First, they reveal nothing about what kind of *instructions* an employer is required to give about known hazards. Second, and more importantly, they emphasize a kind of "obviousness" that is not at issue here.

There is no dispute that being struck by traffic (or falling off of a roof) is an obvious hazard. What's at issue is whether the hazard of *crossing an active roadway* was so obvious that no instruction about doing so safely was required. Fairfield

As one of the majority Commissioners noted, "there is no reason to believe that policies established to address 'crossing an active roadway' will be any more burdensome or will be the object of more subjective application and enforcement than the policies or procedures now in place for 'working around moving traffic.'" *Fairfield II*, at *4 n.12. The Commission did not arbitrarily or capriciously find that Fairfield had actual knowledge of a hazard about which it should have provided guidance, and the Commission's application of the OSHA regulations did not violate Fairfield's due process rights.

## 2.  Obviousness of the Hazard

Fairfield contends that its existing training was adequate because the OSHA regulations could not have required it to train experienced highway workers about the obvious hazard of crossing an interstate on foot. This argument, though superficially alluring, is unpersuasive.

"An employer's instructions are not necessarily deficient just because they allow the employees discretion as to how to proceed, particularly where the working circumstances are such that no one form of protection is capable of being used every time." *El Paso Crane and Rigging Co.*, 1993 WL 393508, at *9 (O.S.H.R.C. Sept. 30, 1993), 1993 O.S.H.D. (CCH) ¶ 30, 231. The primary inquiry is "whether the employer's program of safety instruction provided adequate guidance." *Id.* at *10. "In determining the reasonableness of instructions, we must consider such factors as the obviousness of the hazard, . . . the experience of the employees, the likelihood that an accident would occur, and the degree of harm that would result from an accident." *Pratt & Whitney Aircraft Group*, 1986 OSAHRC LEXIS 138, at *6 (O.S.H.R.C. Apr. 18, 1986), 2 O.S.H. Cas. (BNA) 1770 (citation omitted).

Fairfield's training involved admonishments regarding working near moving traffic. For example: "Think about the drivers on the road who will be passing through your work zone"; "Pay close attention to the traffic around you—make

After an OSHA inspection, the Secretary of Labor cited Fairfield for three violations. During "E-Z Trial" proceedings, the ALJ dismissed one of the violations and affirmed the remaining two: a violation of 29 C.F.R. § 1926.20(b)(1), the employer's duty to initiate and maintain safety programs; and a violation of 29 C.F.R. § 1926.21(b)(2), the employer's duty to instruct employees to recognize and avoid unsafe conditions. The ALJ concluded "that a reasonable person could not stand at the side of a six lane interstate highway with traffic traveling between 55 and 70 miles per hour and rationally think they could cross safely on foot," and that the practice of crossing the highway on foot should have been prohibited. *W.G. Fairfield Co.*, 1999 WL 699852, at *2 (O.S.H.R.C. Aug. 27, 1999) ("*Fairfield I*").

In a split decision, the Occupational Health and Safety Review Commission affirmed the violations. *Secretary of Labor v. W.G. Fairfield Co.*, 2000 WL 1535922, (O.S.H.R.C. Oct. 16, 2000) ("*Fairfield II*"). Although the Commission disagreed with the ALJ's conclusion that crossing the highway should have been prohibited, it found that Fairfield was required, as a reasonably prudent employer, to address the practice in its safety program and employee training "[b]ased on Fairfield's actual knowledge of the hazard of crossing an active highway on foot and its failure to specifically address that hazard when it was aware of at least one potentially safer alternative." *Id.* at *4-*5.

## II

Fairfield and the *amicus curiae* Ohio Contractors Association raise a host of arguments related to due process, legal error, and insufficiency of the evidence.[1] However

---

[1] Fairfield asserts a violation of due process because the OSHA regulations did not provide fair warning that Fairfield was required to train employees about crossing active roadways, and because the Secretary was required to, and did not, present evidence of customary training in the highway construction industry before imposing the requirements. As to legal error, Fairfield asserts that OSHA regulations

couched, the determinative issue is whether Fairfield acted as a "reasonably prudent employer" in conforming its safety program to any known duty to correct and detect hazards. *See Northwood Stone & Asphalt, Inc.*, 1994 WL 597394, at *2 (O.S.H.R.C. Nov. 1, 1994), 16 O.S.H. Cas. (BNA) 2097, *aff'd*, 82 F.2d 418 (6th Cir. 1996). If Fairfield did all it needed to do, the OSHA regulations were misapplied. If it didn't, the citations should be affirmed.

## A.   Standard of Review

Factual findings by the OSHRC should be affirmed if "substantial evidence in the record taken as a whole" support them. *Nat'l Eng'g and Contracting Co. v. OSHA*, 928 F.2d 762, 767 (6th Cir. 1991). Legal conclusions are affirmed unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act). There is no dispute of fact here. The parties differ as to the application of the law to the facts.[2]

We deny Fairfield's request that we not consider the Secretary's argument about the Manual on Uniform Traffic Control Devices ("MUTCD") because it was never before

---

do not require a company to train about obvious hazards such as crossing active roadways on foot, and that the company should not be responsible when cautious, well-trained employees suffer from inexplicable accidents. The *amicus* contends that the Commission erred by affirming OSHA violations where, consistent with industry practice, the employer provided general guidance to its employees concerning an obvious hazard.

[2] The Secretary contends that "[a] determination that an employer failed to recognize that a condition to which its employees were exposed constituted a hazard that a reasonably prudent employer would have addressed in its accident-prevention and training programs is a factual one." That statement is incorrect: the "reasonably prudent employer" standard is unequivocally legal. Fairfield admits that crossing a road can be hazardous and that it did not institute a policy or training to specifically address it; only the legal question of whether Fairfield was required to do so remains.

active roadways. The Secretary counters that the MUTCD—a federally revised and state-adopted manual that private companies are obligated to follow—provides an objective source for this duty.

The Secretary's MUTCD argument, offered for the first time on appeal, is merely duplicative of the purpose of OSHA and the cited regulations, which require an employer to institute policies and training about known hazards. *See, e.g., Ray Evers*, 625 F.2d at 728-31 (discussing OSHA regulations with respect to a general duty to require employees to use appropriate personal protection equipment). The decedent left the work zone—a trench beside the highway for which there were signs posted to alert motorists—to walk across six lanes of traffic without the assistance of a vehicle, signs, or other employees. Fairfield permitted him full discretion to do so. Under OSHA, its regulations, and even the MUTCD, Fairfield had a clear duty to do more than explain that vehicular traffic can be dangerous, especially in light of feasible alternatives and the regularity with which employees undertook such grave risks.

Fairfield and the amicus argue that it is nearly impossible to discern exactly what kind training is required by the Commission's ruling. For example, the amicus asks, "Is such training also necessary when employees might be crossing a busy, urban street? A suburban thoroughfare at rush hour? A limited access state highway in a rural area?"

This argument is unpersuasive. The Commission ruled that "[a]n employer's obligation to instruct and train is dependent upon the specific conditions, whether those conditions create a hazard, and whether the employer or its industry has recognized the hazard." *Fairfield II*, at *3. In other words, Fairfield should conduct its training on crossing roadways with a reasonableness standard in mind. We have recognized that general regulations are not constitutionally infirm on due process grounds so long as a reasonableness requirement is read into them. *See Ray Evers*, 625 F.2d at 731-32.

opined that the proper practice should have been to forbid employees to cross multiple lane highways on foot. *Id.* Although the Commission majority disagreed that an outright prohibition was the *only* alternative available, it noted that "[t]hree of Fairfield's foremen agreed that the practice [of crossing the highway on foot] can be dangerous depending upon the circumstances. Indeed, Fairfield's own employees testified that the company was aware of and sometimes utilized the potentially safer alternative of driving a vehicle to the opposite side of an active interstate highway." *Fairfield II*, at *3. Fairfield did not restrict employee discretion regarding the proper method and timing for crossing active roadways beyond general warnings about staying aware of traffic. This amply illustrates Fairfield's actual knowledge of a hazard it declined to address even in light of at least one known, feasible alternative.

Although Fairfield cites the general rule that industry-wide negligence must be proven,[4] it is conspicuously silent about whether such proof is necessary in light of actual knowledge of a hazard. It thus never directly disputes that the Commission majority could hold, with perfect consistency, both that the Secretary had failed to establish an industry custom regarding crossing active roadways, and that Fairfield's *actual knowledge* of the hazard, and its failure to address that hazard in its safety program and employee training, violated the cited OSHA regulations. *See Fairfield II*, at *4 & n.13.

Fairfield attempts to salvage its argument by contending that the Secretary can point to no source for the duty to institute programs and training for employees on crossing

[4] Fairfield relies primarily on the following quote: "Reasonableness is an objective test which must be determined on the basis of evidence in the record. Industry standards and customs are not entirely determinative of reasonableness because there may be instances where a whole industry has been negligent . . . . However, such negligence on the part of a whole industry cannot be lightly presumed. It must be proven." *Ray Evers Welding v. OSHRC*, 625 F.2d 726, 732 (6th Cir. 1980) (citation omitted).

raised.[3] "'It is well accepted . . . that without filing a cross-appeal or cross petition, an appellee may rely upon any matter appearing in the record in support of the judgment below.' The statutory argument raised by the appellees, although not presented in the District Court, may be decided on the basis of the record developed in that court." *Schweiker v. Hogan*, 457 U.S. 569, 585 n. 24 (1982) (citation omitted) (quoting *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982)); *see Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (quoting *Dandridge v. Williams*, 397 U.S. 471, 475 n.6, for proposition that "[t]he prevailing party may . . . assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied on or even considered by the trial court"). A copy of Ohio's version of the MUTCD was admitted without objection as an exhibit during the E-Z Trial and is part of the record on appeal.

## B.  Violation of the OSHA Regulations

The Secretary charged Fairfield with violating two OSHA regulations related to safety programs and training:

- 29 C.F.R. § 1926.20(b)(1): "It shall be the responsibility of the employer to initiate and maintain such programs as may be necessary to comply with this part."

- 29 C.F.R. § 1926.21(b)(2): "The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations

[3] The Federal Highway Commission revises the MUTCD and requires states to adopt a comparable MUTCD. Ohio has done so and private companies, such as Fairfield, are contractually required to comply with the state MUTCD. The Secretary contends that the MUTCD provides an objective source for the duty to instruct employees not to deviate from traffic control plans by, for example, leaving work zones to cross the highway. This is the first time the Secretary has made this argument and neither the ALJ nor the Commission discussed the MUTCD in affirming the OSHA violations.

applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."

The § 1926.20(b)(1) violation was for "failing to establish policies or procedures related to the safe movement of employees across active roadways." *Fairfield II*, at *2. The § 1926.21(b)(2) violation was for "failing to instruct its employees exposed to vehicular traffic when crossing a major interstate as to a safe means of access to medians and the opposite side of the road." *Id.* Stated simply, one citation was for not making the proper policies, and the other was for not instructing employees on those policies.

Neither Fairfield nor the *amicus* dispute the hazardous nature of crossing active roadways. Their myriad arguments may be distilled down to two primary contentions: (1) the Commission erred by applying the regulations in an unconstitutionally arbitrary manner and without reference to industry standards; and (2) the Commission erred by requiring training about the obvious hazard of crossing an active roadway on foot.

### 1.    Arbitrary Application and Industry Standards

Fairfield argues that a reasonably prudent employer would not have known that the OSHA regulations required training employees about the hazards of crossing an active roadway. As support, Fairfield notes that all three Commissioners agreed that the Secretary failed to prove either that Fairfield fell below industry standards or that the entire highway construction industry was negligent. Fairfield's argument is unpersuasive in light of the factual finding that it had actual knowledge about the common practice of employees crossing active roadways.

Under § 1926.20(b)(1), "an employer may reasonably be expected to conform its safety program to any known duties and . . . a safety program must include those measures for detecting and correcting hazards which a reasonably prudent employer similarly situated would adopt. *Northwood Stone*

*& Asphalt, Inc.*, 1994 WL 597394, at *2. Under § 1926.21(b)(2), an employer "must instruct its employees in the recognition and avoidance of those hazards of which a reasonably prudent employer would have been aware." *Pressure Concrete Constr. Co.*, 1992 WL 381670 , at *5 (O.S.H.R.C. Dec. 7, 1992), 15 O.S.H. Cas. (BNA) 2011.

In interpreting such general standards, the court examines whether "'a reasonable person,' examining the generalized standard in light of a particular set of circumstances, can determine what is required, *or* if the particular employer was *actually aware* of the existence of a hazard and of a means by which to abate it." *R & R Builders, Inc.*, 1991 OSAHRC LEXIS 161, at *17 (O.S.H.R.C. Nov. 25, 1991), 15 O.S.H. Cas. (BNA) 1383 (emphases added). As we held in analyzing the analogous OSHA general duty clause, "[t]he question of whether a hazard is recognized goes to the knowledge of the employer, *or if he lacks actual knowledge*, to the standard of knowledge in the industry—an objective test." *Continental Oil Co. v. OSHRC*, 630 F.2d 446, 448 (6th Cir. 1980) (emphasis added).

The conjunction "or" is important. The Secretary need not prove a violation of industry standards if she proves actual knowledge of a hazard. *See Nelson Tree Services, Inc. v. OSHRC*, 60 F.3d 1207, 1210 (6th Cir. 1995) (holding that employer's actual knowledge of potential hazard established recognition under General Duty Clause, 29 U.S.C. § 654(a)(1)); *see, e.g.*, *Brennan v. OSHRC*, 494 F.2d 460, 464 (8th Cir. 1974) (examining "recognized" hazards under OSHA's General Duty Clause, and noting that "the term recognized was chosen by Congress not to exclude actual knowledge, but rather to reach beyond an employer's actual knowledge to include the generally recognized knowledge of the industry as well").

The ALJ found that Fairfield "knew that its employees, Mr. Wolfe included, regularly crossed lanes of interstate highways on foot." *Fairfield I*, at *2. The compliance officer and a sheriff's deputy with extensive experience in highway safety