COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Felton and Kelsey
Argued at Chesapeake, Virginia


GORDON O'NEIL BLACKMAN
                                                        OPINION BY
v.       Record No. 3241-03-1                  JUDGE D. ARTHUR KELSEY
                                                        MAY 24, 2005
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                          Russell I. Townsend, Jr., Judge

            Andrew M. Sacks (Sacks & Sacks, P.C., on briefs), for appellant.

            Stephen R. McCullough, Assistant Attorney General (Judith
            Williams Jagdmann, Attorney General, on brief), for appellee.


        A jury convicted Gordon O'Neil Blackman of first-degree murder and use of a firearm in

the commission of a felony.  On appeal, Blackman argues the trial court violated his Sixth

Amendment rights under the Confrontation Clause by not granting a mistrial after a witness

testified to statements made by Ryan Sullivan, a codefendant, that allegedly incriminated

Blackman.  We affirm Blackman's conviction, finding no error in the trial court's refusal to

declare a mistrial.

                                              I.

        One afternoon in September 1999, Timothy Puckett drove to a shopping center in

Chesapeake to meet a friend, John Jordan, at NAPA Auto Parts.  Also located in the shopping

center was the Village Grill, where Ryan Sullivan (Blackman's cousin) and Randy Nurse

(Blackman's brother) both worked.  As Puckett was pulling into the parking lot, a gray Toyota

car cut him off.  A fight broke out between Puckett and the two occupants of the Toyota.  Jordan

arrived and tried to break up the fight.

One of the occupants of the Toyota fired a gun, and Puckett fell to the ground. The men began kicking Puckett in the head and ribs as he lay on the ground. The men then "walked back to the car like they had done nothing" and drove away in the Toyota. Puckett later died from his gunshot wound.

Five witnesses, including Jordan, identified Blackman at trial as the man who shot Puckett. The two men in the Toyota, witnesses testified, were Blackman and Sullivan. Ballistics testing showed that a bullet found at the crime scene had been fired from a weapon with the "same general rifling class characteristics" as a handgun recovered from Sullivan's home.

A grand jury indicted both Blackman and Sullivan. The case proceeded to a joint trial against both codefendants. At trial, Blackman took the stand and claimed he was in Pennsylvania on the day of the shooting. He had nothing to do with the murder, Blackman testified.

Sullivan likewise took the stand in his own defense. He corroborated Blackman's alibi. Sullivan also denied any involvement in the murder, saying he drove up to the crime scene only after the shooting had taken place. During his examination, Sullivan was asked if he had made any statements to an inmate, Anthony Wilson, while in jail awaiting trial:

> Prosecutor: Now, sir, I would like to call your attention to a period of time between October 8 through November 15, 1999.
>
> Sullivan: Yes, sir.
>
> Prosecutor: And I would like to ask you that during that time, do you remember talking to an individual by the name of Anthony Wilson and telling him that you had been involved in a murder at the Village Grill, that you had left, that you had come back to make it look like you weren't involved. Do you remember that?
>
> Sullivan: No, sir. I never told – never had that discussion with anyone, sir.

| Prosecutor: | Do you also remember telling him during this period of time that the police had come by your house numerous times?  Do you remember that? |
|---|---|
| Sullivan: | I never had no such discussion with anyone, sir. |

Blackman's counsel then cross-examined Sullivan.  During a break in this examination, Blackman's counsel sought leave to ask questions seeking to bolster Sullivan's testimony, particularly since the prosecution had "challenged him with a statement from Mr. Anthony Wilson."  The trial judge permitted some, but not all, of Blackman's questions.  During the remainder of cross-examination, Blackman's counsel asked no specific questions about any statement to Wilson.  Counsel did confirm, however, that Sullivan was incarcerated during the time frame of the statement he denied making.

| Counsel: | Were you incarcerated as a result of that offense from October 8 to November 15, awaiting pretrial proceedings? |
|---|---|
| Sullivan: | Yes, sir. |

Sullivan was then questioned on redirect by his own counsel and then again on recross by Blackman's counsel.  Neither inquired further about the alleged statement Sullivan made to Wilson in jail.  After Sullivan left the stand, Blackman's counsel asked for leave to recall Sullivan for further questioning.  The trial judge allowed Blackman's counsel to recall Sullivan "as your witness."  Sullivan's counsel raised no objection.  Blackman's counsel questioned Sullivan again, but did not ask about the statement Sullivan had previously denied making.

After the defense rested, the Commonwealth called Anthony Wilson in its rebuttal case against Sullivan.  At Blackman's request, the trial judge questioned Wilson outside the presence of the jury.  Wilson said that, while in jail, Sullivan admitted he "was involved in a murder" and then left the scene of the crime to take "his cousin somewhere."  Because Sullivan and Blackman were cousins, the trial judge asked Wilson if Sullivan said anything more specific about his

- 3 -

cousin. "We didn't get into his cousin," Wilson answered. The prosecutor again noted to the court that he offered this testimony only against Sullivan. To avoid any conflict with Blackman, the prosecutor asked that Wilson be instructed not to make any reference to Sullivan's cousin.

Blackman's counsel objected to any testimony from Wilson, claiming that Wilson's testimony raised "a serious problem" with Blackman's confrontation rights. After further argument, Blackman's counsel continued to press a hearsay objection but said he was "giving up the 6th Amendment issue" in light of the prosecutor's agreement to bar Wilson from making any indirect reference to Blackman.

At the joint request of all parties, the trial judge instructed Wilson not to mention anything about Sullivan's cousin. The judge also gave a cautionary instruction directing the jurors not to consider Wilson's testimony in the case against Blackman:

> The Court instructs the jury that the testimony of the next witness, Anthony Wilson, is being offered for your consideration in the case against Ryan Sullivan. You are specifically instructed that you cannot consider his testimony in any way in the case against Gordon Blackman.

During his testimony, Wilson stated that Sullivan admitted being "involved in a murder out in front of his club." After the murder, Wilson recalled, Sullivan said he "left, him and his cousin. He took his cousin somewhere, and he came back, you know like he wasn't involved." Sullivan's counsel objected, and the trial judge sustained the objection.

Blackman's trial counsel then moved for a mistrial, arguing that the "jury has now been tainted by evidence that it never should have heard. It's created a full-blown constitutional problem, and the only remedy is a mistrial." The prosecutor disagreed, arguing that the problem could be "easily cured with a curative instruction." The trial judge agreed, holding that the initial cautionary instruction coupled with any curative instruction Blackman wished to offer would suffice as a remedy. The judge invited Blackman's counsel to proffer a curative instruction.

- 4 -

Blackman's counsel offered none, explaining there "is nothing you can say in my professional judgment."

After cross-examining Wilson, Blackman's counsel asked for leave to present surrebuttal evidence seeking to challenge Wilson's credibility by contradicting testimony he gave about his criminal record. The trial judge allowed the surrebuttal evidence. At no time did Blackman seek to recall Sullivan to the stand during surrebuttal.

The jury found Blackman guilty of first-degree murder and use of a firearm in the commission of a felony. Sullivan was convicted of malicious wounding. On appeal, Blackman argues that Wilson's testimony violated his rights under the Confrontation Clause of the Sixth Amendment. Nothing short of a mistrial, Blackman contends, could have cured this "reversible constitutional error."

## II.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. Amend. VI, cl. 3. On appeal, Blackman primarily relies on two cases in support of his argument that Wilson's testimony violated the Confrontation Clause: Bruton v. United States, 391 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36 (2004). In our opinion, neither case supports Blackman's argument.[1]

_____

[1] Given that we find no Sixth Amendment violation, we do not address the Commonwealth's alternative harmless error argument. See Dearing v. Commonwealth, 259 Va. 117, 123-24, 524 S.E.2d 121, 125 (2000) (finding the Confrontation Clause error, in admitting a codefendant's statement, was "harmless beyond a reasonable doubt" due to the additional overwhelming evidence).

## A.  THE BRUTON DOCTRINE & THE TESTIFYING DECLARANT

The United States Supreme Court in <u>Bruton</u> held that at a joint trial, the admission into evidence of a *nontestifying* codefendant's out-of-court confession violates the Confrontation Clause if the confession incriminates the other defendant.  A trial court cannot remedy the constitutional violation of this magnitude with a curative instruction, <u>Bruton</u> found, because the instruction cannot be viewed "as an adequate substitute" for the loss of the opportunity to cross-examine the declarant.  <u>Bruton</u>, 391 U.S. at 137; <u>see</u> <u>also</u> <u>Cruz v. New York</u>, 481 U.S. 186, 193-94 (1987); <u>United States v. Truslow</u>, 530 F.2d 257, 260 (4th Cir. 1975).

The <u>Bruton</u> principle, however, applies only when the codefendant does not testify at trial.  <u>See</u> <u>Nelson v. O'Neil</u>, 402 U.S. 622, 628 (1971) (explaining that the "specific holding" of <u>Bruton</u> was limited to situations where the codefendant could not be cross-examined because he "did not take the stand"); <u>California v. Green</u>, 399 U.S. 149, 158 (1970).  Thus, when "a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments."  <u>Nelson</u>, 402 U.S. at 629-30; <u>see</u> <u>also</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987) (noting that "the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand").[2]

That is precisely what happened here.  Sullivan took the stand in his own defense.  He denied making the statement to Wilson and testified he "never had that discussion with anyone."

---

[2] <u>See</u> <u>also</u> <u>United States v. Howard</u>, 590 F.2d 564, 569 (4th Cir. 1979) (holding that "<u>Bruton</u> has been limited to situations where the co-defendant/declarant elects not to testify"); <u>Joyner v. United States</u>, 547 F.2d 1199, 1201 (4th Cir. 1977) (holding the <u>Bruton</u> doctrine inapplicable where codefendant "elected to testify and was available for cross-examination").

Sullivan also testified favorably to Blackman and confirmed his alibi. Blackman's counsel questioned Wilson on cross and again on recross. After Wilson was excused, Blackman recalled Sullivan to the stand for further questioning.

Sullivan was not merely *available* to take the stand as a witness. He was a witness. He was examined not once, but three times, by Blackman's counsel. Blackman's assertion that Bruton involved "almost the identical facts as here" overlooks this dispositive dissimilarity between the two cases.[3] In short, the fact that Sullivan "was on the witness stand and subject to cross-examination made Bruton's exclusionary rule inapplicable." United States v. Bodden, 736 F.2d 142, 144 n.1 (4th Cir. 1984); see also Paden v. Commonwealth, 259 Va. 595, 596-97, 529 S.E.2d 792, 793 (2000) (rejecting claim of unavailability when the witness was "present at trial" but had not expressly invoked his Fifth Amendment right against self-incrimination).

We similarly reject Blackman's assertion that the Fifth Amendment precluded him, had he chosen to do so, from recalling Sullivan to the stand after Wilson's testimony. "Taking the stand to testify on the merits in a criminal proceeding is a once-and-for-all waiver of the privilege." John L. Costello, Virginia Criminal Law & Procedure § 43.7-3, at 588 (3d ed. 2002). In other words, a "testifying accused waives his privilege against self-incrimination '*absolutely and in all respects*.'" Wells v. Commonwealth, 32 Va. App. 775, 785-86, 531 S.E.2d 16, 21 (2000) (emphasis in original) (quoting Thaniel v. Commonwealth, 132 Va. 795, 806, 111 S.E. 259, 262 (1922)); see also Code § 19.2-268 (providing that an "accused may be sworn and

---

[3] In light of our holding, we need not decide whether Sullivan's reference to "his cousin" directly incriminated Blackman "on its face." See Richardson, 481 U.S. at 208-09 (finding as long as the non-testifying defendant's statement does not on its face inculpate the codefendant, it is admissible even if it becomes incriminating when linked with other evidence); United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994) ("A Bruton problem exists only to the extent that the [non-testifying] codefendant's statement in question, on its face, implicates the defendant.").

examined in his own behalf, and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness"). Settled principles of subject-matter waiver explain why:

> It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. The privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry.

Mitchell v. United States, 526 U.S. 314, 321 (1999) (citations and internal quotation marks omitted); see also Charles E. Friend, The Law Of Evidence In Virginia § 7-7(b)(1)(3), at 269 (6th ed. 2003) (noting that the scope of subject-matter waiver includes "all relevant matters" arising out of the accused's testimony on direct examination).

Perhaps so, Blackman responds, but in this case the trial judge made an "implied" holding of unavailability binding on appeal as the "law of the case." In addition, Blackman contends, we must apply the Bruton doctrine even to a testifying declarant (no matter what the law says on the subject) because the prosecutor never raised this point at trial and thus waived it on appeal. We find neither assertion persuasive.

First, nothing in the record suggests the trial judge implicitly held that Sullivan was unavailable as a witness — a counterintuitive conclusion, at best, given that Sullivan had already been a witness on his own behalf, had separately appeared as a witness for Blackman, and was present in the courtroom throughout the joint trial. It is entirely more likely the judge merely accepted the self-imposed limitations placed on Wilson's testimony that the party offering it, the Commonwealth, imposed upon itself. By denying Blackman's mistrial motion and relying instead on a curative instruction (a wholly insufficient remedy under Bruton), the trial judge did the opposite of what his supposed implicit holding would have legally dictated.

Second, as to the prosecutor's alleged waiver, the procedural default principles of Rule 5A:18 apply only to grounds asserted as a "basis for reversal" of the trial court's judgment. See Harris v. Commonwealth, 39 Va. App. 670, 675, 576 S.E.2d 228, 231 (2003) (*en banc*). An appellate court cannot vacate a criminal conviction that violates no recognizable legal principle simply on the ground that the prosecutor (or, for that matter, the trial judge) did not articulate the proper legal basis for it. Thus, an appellee may argue for the first time on appeal any legal ground in support of a judgment so long as it does not require new factual determinations, see id. at 676, 576 S.E.2d at 231, or involve an affirmative defense that must be "asserted in the pleadings," Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), or serve as a subterfuge for a constitutionally prohibited cross-appeal in a criminal case, Hart v. Commonwealth, 221 Va. 283, 290, 269 S.E.2d 806, 811 (1980).[4] This disparity in treatment under Rule 5A:18 between appellants and appellees stems from the presumption of correctness of trial court rulings[5] and the corresponding burden on appellants to rebut that presumption.[6]

---

[4] See generally Schweiker v. Hogan, 457 U.S. 569, 585 n.24 (1982) ("The statutory argument raised by the appellees, *although not presented* in the District Court, may be decided on the basis of the record developed in that court." (emphasis added)); W.G. Fairfield Co. v. Occupational Safety & Health Review Comm., 285 F.3d 499, 504 (6th Cir. 2002); Glaxo Group Ltd. v. TorPharm, Inc., 153 F.3d 1366, 1371 (Fed. Cir. 1998).

[5] See Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003).

[6] We likewise reject Blackman's assertion at oral argument that the Commonwealth conceded the issue on appeal as well. Before us, the Commonwealth argues that "this case goes further than Paden [where no evidence suggested the declarant would take the Fifth and refuse to testify] since the co-defendant in the case at bar had actually testified. Sullivan had been available for cross-examination before; if he was suddenly unavailable, the record should have been made to reflect this fact. Since the defendant failed to show that Sullivan was 'unavailable' — a prerequisite to a finding of a Confrontation violation — his Confrontation argument fails." Appellee's Brief at 20-21. In its harmless error analysis, the Commonwealth continues: "In the present case, Sullivan not only testified, he specifically denied making the statement attributed to him by Wilson. Furthermore, Blackman had the opportunity to cross-examine Sullivan.

B. CRAWFORD & TESTIMONIAL EVIDENCE

Blackman argues that Crawford "essentially gutted the older constructs" and instead "keyed Sixth Amendment jurisprudence principally to whether the statement being offered is testimonial or not." From there, Blackman reasons that Sullivan's statement in the jail to Wilson was testimonial under Crawford. Sullivan's availability or unavailability to take the stand, Blackman then concludes, no longer matters under Crawford.

To begin with, we question whether an inmate-to-inmate conversation (wholly unconnected to any police inquiry) could be fairly characterized as testimonial. Crawford identifies the "core class" of testimonial evidence to include such things as *ex parte* testimony, custodial interrogations, affidavits, confessions to police, depositions, prior testimony before a grand jury or at a preliminary hearing, or "similar pretrial statements that *declarants* would reasonably expect to be used prosecutorially." Crawford, 541 U.S. at 51-52 (emphasis added).[7] It is hardly likely Sullivan expected his confession to Wilson would be "used prosecutorially" at trial. Id. at 51.

In this case, however, we need not stake out the exact boundaries of testimonial evidence under Crawford. Underlying Blackman's argument is an unacknowledged, but logically necessary, assumption that Crawford somehow changed the settled view that the Confrontation Clause is not violated when the codefendant declarant *actually testifies* at trial. See Nelson, 402

---

Although this cross-examination occurred before Wilson actually testified, nothing prevented the defendant from questioning Sullivan concerning the statement he made to Wilson." Id. at 26.

[7] This description would not directly affect Bruton because the codefendant in that case gave an in-custody confession to law enforcement officers. See Crawford, 541 U.S. at 57 (citing Bruton as an example of properly suppressed testimonial evidence). The same can be said of Lilly v. Virginia, 527 U.S. 116, 134 (1999) (plurality opinion), rev'g 255 Va. 558, 499 S.E.2d 522 (1998), which involved a codefendant's confession in response to police interrogation.

U.S. at 628; <u>Green</u>, 399 U.S. at 158; <u>Howard</u>, 590 F.2d at 569; <u>Joyner</u>, 547 F.2d at 1201.[8]  For all its novelty, on the issue in contest here, <u>Crawford</u> confirms the traditional view that the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."  <u>Crawford</u>, 541 U.S. at 59 n.9.  Seeking to emphasize the point, the majority in <u>Crawford</u> said, "we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints *at all* on the use of his prior testimonial statements."  <u>Id.</u> (citing <u>Green</u>, 399 U.S. at 162) (emphasis added); see <u>People v. Martinez</u>, 810 N.E.2d 199, 212 (Ill. App. Ct. 2004) (holding no <u>Crawford</u> violation occurs where the declarant was "available in court and on the witness stand").  For this reason, <u>Crawford</u> supports the trial judge's decision not to declare a mistrial.

## III.

Because no Confrontation Clause violation took place as a matter of law, there was no infirmity of constitutional magnitude requiring the remedy of a mistrial.  We thus affirm Blackman's conviction for first-degree murder and use of a firearm in the commission of a felony.

<u>Affirmed.</u>

---

[8] For similar reasons, we do not address whether <u>Crawford</u> ejects from Blackman's argument any claim of any constitutional magnitude — leaving him with a mere hearsay objection under Virginia evidentiary law which (unlike a <u>Bruton</u> violation) could have been cured with a cautionary instruction.  <u>Cf.</u> <u>Crawford</u>, 541 U.S. at 61 (recognizing that its analysis "casts doubt" on any further application of the Confrontation Clause to nontestimonial evidence).