COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia

TONY L. JONES, A/K/A LOCO,
  S/K/A TONY LAMONT JONES
                                              MEMORANDUM OPINION[*] BY
v.            Record No. 1434-06-3           JUDGE D. ARTHUR KELSEY
                                                NOVEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
                          Humes J. Franklin, Jr., Judge

                Duane K. Barron, Assistant Public Defender (Office of
                the Public Defender, on briefs), for appellant.

                Craig W. Stallard, Assistant Attorney General, (Robert F.
                McDonnell, Attorney General; Joshua M. Didlake,
                Assistant Attorney General, on brief), for appellee.


        In a joint trial involving three defendants, a jury convicted Tony Lamont Jones of

first-degree murder, Code § 18.2-32, and use of a firearm during the commission of a felony,

Code § 18.2-53.1. On appeal, Jones argues no rational factfinder could find him guilty based

upon the evidence submitted against him at trial. We agree and reverse his convictions.

                                            I.

        On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v.

Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). This principle requires the reviewing

court to "discard the evidence of the accused in conflict with that of the Commonwealth, and

regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

be drawn therefrom." Id. (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

The evidence at trial showed that Tiffany Lucas and her boyfriend, Tyrone Davis, lived together in the Brandon Ladd apartment complex in Waynesboro. One evening in December 2000, Lucas returned to their apartment and found Davis dead from gunshot wounds to the head and neck. The apartment was ransacked. Guns, money, and jewelry were missing. Lucas immediately called the police. Investigators interviewed Lucas and learned from her that Aimee Jacques had stolen guns and drugs from Davis in the past. Investigators later found Jacques incarcerated in the Harrisonburg jail, taken into custody for other crimes. Jacques cooperated with the investigators and admitted he had been at the scene of Davis's murder. Jacques also implicated Sherman Jones and Tony Jones in the murder of Tyrone Davis.

Investigators also interviewed Lyvonne Edwards, who told them he knew Sherman and Tony Jones. They would give him drugs and cash in exchange for the use of his car, Edwards explained. In February 2001, Edwards met Sherman and Tony Jones to retrieve his car. He asked them when they would need to borrow it again. Tony Jones replied, "We've got to go to . . . [w]e're going to Connecticut." Why?, Edwards asked. "Well, Sherman popped this dude, in – in Brandon Ladd, so we've got to . . . roll up," Tony Jones answered. Sherman Jones then added, "We've got to roll up."[1]

Investigators later spoke to Tony Jones. He admitted he "hung out" with Sherman Jones "quite a bit," but said he "hung out" with Jacques only occasionally. Tony Jones also said he

---

[1] In his opening statement, the prosecutor mistakenly anticipated that the evidence would show that Edwards heard Tony Jones say: "*We* capped somebody at Brandon Ladd. We've got to go. We've got to get out of here. We've got to go again." In his closing argument, the prosecutor mistakenly recalled the evidence as Edwards hearing Tony Jones say: "Oh, we've got to — we've got to go. *We* . . . Sherman popped a guy at Brandon Ladd, and we've got to roll up." It was not until the prosecutor's rebuttal argument that he acknowledged Edwards testified that Tony Jones said only that "*Sherman* popped" someone and "we've" got to "roll up."

was in Waynesboro the night of the murder but could not remember who he was with that particular day. He stated he did not know Davis and had never been to Davis's apartment. When investigators repeated to Tony Jones the information they learned from Edwards, Tony denied ever making the remarks attributed to him. While making this denial, Tony Jones "grabb[ed] [his] chair" and became "tense and nervous." His knuckles were "bright white" and his mouth "pasty."

In 2005, police arrested Tony Jones, Sherman Jones, and Aimee Jacques for the 2000 murder of Tyrone Davis. The Commonwealth requested a joint trial of all three co-defendants. Prior to trial, Tony Jones made an *in limine* motion objecting to the admissibility of any statements by his co-defendants to police investigators. These statements would be admissible against the declarants themselves, Tony Jones argued, but not against him. See generally Blackman v. Commonwealth, 45 Va. App. 633, 639, 613 S.E.2d 460, 463 (2005) (recognizing that "at a joint trial, the admission into evidence of a *nontestifying* codefendant's out-of-court confession violates the Confrontation Clause if the confession incriminates the other defendant" (emphasis in original)).

The prosecutor conceded the point and offered to introduce the co-defendants' statements only against the declarants themselves. A cautionary instruction, the prosecutor suggested, would direct the jury not to consider the statements as evidence against Tony Jones. Cf. Blackman, 45 Va. App. at 639, 613 S.E.2d at 463-64 (noting that a "curative instruction" has been held inadequate to protect the defendant's confrontation rights under these circumstances). Counsel for Tony Jones accepted the cautionary instruction and withdrew any further objection to the evidence.

At trial, none of the co-defendants testified. At the beginning of trial, the judge instructed the jury not to consider any out-of-court statements made by Aimee Jacques when determining

whether Tony Jones was guilty.[2]  The remaining evidence of Tony Jones's guilt consisted of these facts:

- Two months after the killing, Tony Jones said to Edwards: "We've got to go to . . . [w]e're going to Connecticut" because "Sherman popped this dude, in – in Brandon Ladd, so we've got to . . . roll up."

- Tony Jones told investigators he had "hung out" with Sherman Jones "quite a bit" and had "hung out" with Jacques on occasion.

- Tony Jones became noticeably nervous when investigators questioned him about the information provided by Edwards.

At the close of the Commonwealth's case and again at the completion of all the evidence, counsel for Tony Jones moved to strike the evidence.[3]  The trial court denied the motions and submitted the case against Tony Jones to the jury with a finding instruction based on a principal-in-the-second-degree theory of liability.  The trial court repeated its earlier instruction directing the jury, when deciding Tony Jones's guilt or innocence, not to consider the out-of-court statements of Aimee Jacques implicating Tony Jones in the murder.

The jury found all three co-defendants guilty.  Tony Jones filed a motion to set aside the verdicts.  This too was denied by the trial court.

---

[2] A jail officer testified that Sherman Jones, during a conversation about his pending murder charge, said:  "I guess I was just at the wrong place at the wrong time."  On appeal, the Commonwealth and Tony Jones debate whether the trial court's cautionary instruction applied to this statement.  We see no need to resolve this issue because the statement does no more than place Sherman Jones (not Tony Jones) at the scene of the murder — a factual allegation already subsumed within Tony Jones's statement that "Sherman popped this dude . . . ."

[3] On appeal, the Commonwealth points out that the motion to strike challenged not the legal sufficiency of the evidence, but the factual credibility of Edwards, the principal witness against Tony Jones.  We need not decide, however, whether this limited argument properly preserved a sufficiency challenge on appeal.  Tony Jones filed a motion to set aside the verdicts in which he made the same sufficiency challenge he now repeats on appeal.  See generally McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 739-40 (1987) ("A prior motion to strike the evidence, however, is not a prerequisite to a motion to set aside the verdict.").

II.

Challenging the evidentiary sufficiency of his murder conviction, Tony Jones argues on appeal the trial court erred as a matter of law in denying his motion to set aside the verdicts.[4] Giving the Commonwealth the benefit of every reasonable inference, he argues, the evidence still fails to present a *prima facie* case that he participated as a principal in the second degree in the murder of Tyrone Davis. We agree.

When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd and adopted on appeal, 266 Va. 397, 588 S.E.2d 149 (2003). A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted).

We instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319 (emphasis in original)).[5] In this way, Virginia law tracks the guarantee of due process, which makes clear "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a [rational] trier of fact beyond a reasonable doubt of the

---

[4] Tony Jones also alleges violations of his statutory and constitutional right to a speedy trial. Our holding on the insufficiency of the evidence, however, renders it unnecessary for us to address any other issue.

[5] In this way, the sufficiency standard on appeal parallels the sufficiency standard governing a trial court's consideration of a motion to strike prior to the submission of the case to the jury, Rahnema v. Rahnema, 47 Va. App. 645, 662 n.7, 626 S.E.2d 448, 457 n.7 (2006), and a motion to set aside after the jury returns a guilty verdict, Seaton v. Commonwealth, 42 Va. App. 739, 747 n.2, 595 S.E.2d 9, 13 n.2 (2004).

existence of every element of the offense." Washington v. Commonwealth, 273 Va. 619, 629, 643 S.E.2d 485, 490 (2007) (quoting Jackson, 443 U.S. at 316); see also Haskins v. Commonwealth, 44 Va. App. 1, 8 n.2, 602 S.E.2d 402, 405 n.2 (2004).

In this case, the Commonwealth indicted Tony Jones for first-degree murder and use of a firearm during the commission of a felony. The prosecutor did not assert Tony Jones was the triggerman, but rather that he participated as a principal in the second degree. As the trial court's instruction to the jury correctly explained:

> A principal in the first degree is the person who actually commits the crime. A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime. Presence and consent alone are not sufficient to constitute aiding and abetting. It must be shown that the defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.

Pryor v. Commonwealth, 50 Va. App. 42, 55, 646 S.E.2d 21, 27 (2007) (quoting 1 Virginia Model Jury Instructions, Criminal, No. 3.100, at 3-3 (2006)); Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (recognizing principal-in-the-second-degree liability where "defendant procured, encouraged, countenanced, or approved commission of the crime").

The evidence falls far short of presenting a *prima facie* case that Tony Jones served as a principal in the second degree in the murder of Tyrone Davis. At its inferential best, the inculpatory evidence shows only that Tony Jones knew that "Sherman popped this dude" (killed Davis) and that, two months after the killing, Tony and Sherman Jones decided to "roll up" (slang for leave the area). We fail to understand how this statement, accompanied by every rational inference we could append to it, places Tony Jones *at the scene of the murder* two months earlier. Nor does any reasonable interpretation of this statement imply that Tony Jones, even if present at the scene of the murder, aided and abetted Sherman Jones in committing it.

The remaining bits of incriminating evidence — that Tony Jones "hung out" regularly with Sherman Jones (and occasionally with Jacques) and became noticeably nervous when interrogated by the police investigator — added little weight to the guilt supposition. This evidence demonstrates that Tony Jones knew the triggerman personally and panicked when the investigator's questions implicated both of them in the murder. Even with the "roll up" evidence tacked on, however, the chain of inferences is simply too delicate to bear the analytical weight put upon them by the murder charge.

III.

The trial court erred in denying the motion to set aside the guilty verdicts. As a matter of law, the evidence presented to the jury was insufficient to prove that Tony Jones participated in the murder of Tyrone Davis or used a firearm during the commission of a felony. We thus reverse the convictions and dismiss the indictments.

Reversed and indictments dismissed.