BEALES, J., with whom ALSTON, J.,
joins, concurring, in part, and dissenting, in part.
The facts presented in this appeal are tragic and disturbing, as the majority opinion aptly describes. However, disturbing as they are, we, nevertheless, as judges on this Court, are *499 required, of course, to follow the binding precedent of the United States Supreme Court and the Supreme Court of Virginia, and, therefore, we must determine whether this case, despite the fact of a tragic killing, also presents legal error of a constitutional nature. After reviewing the relevant law, I find that I must reach a different conclusion than the majority opinion on several issues in the analysis of this case, although I also would ultimately conclude that most of appellant’s convictions should be affirmed.
I. The Affidavit
The majority opinion finds that the trial prosecutor “neither conceded nor disputed” the trial court’s, and appellant’s, position that Mrs. Crawford’s affidavit was testimonial hearsay and that, even if the prosecutor did concede that the affidavit was testimonial, he was wrong. I must disagree with both of these positions.
A. The Commonwealth’s Concession and Right Result/Wrong Reason
The majority opinion states, “[T]he Commonwealth neither conceded nor disputed the trial court’s analysis” on the issue of testimonial hearsay. I disagree. An analysis of the record in this case clearly establishes that the Commonwealth conceded this point, even if the prosecutor did not take the ultimate step and explicitly state that he agreed with appellant’s characterization of the evidence as testimonial hearsay. Therefore, because of the facts the trial court found (and did not find) and presumed in reaching this legal conclusion, I do not believe this case presents an appropriate situation for the application of the “right result/wrong reason” doctrine. See Whitehead v. Commonwealth, 278 Va. 105, 115, 677 S.E.2d 265, 270 (2009), modified, No. 080775 (Oct. 22, 2009).
Appellant filed a written motion in limine, asking the trial court to exclude the 2004 affidavit that Mrs. Crawford filed with the JDR court as part of a preliminary protective order petition. He argued that the document was testimonial and that its introduction into evidence would violate the Confronta *500 tion Clause. The motion also asked that the trial court exclude other “non-testimonial” statements that the Commonwealth intended to introduce at trial. The Commonwealth filed a written response to this motion, which labeled the affidavits “testimonial.” In its response to appellant’s arguments about the affidavit, the Commonwealth argued only that the affidavit was admissible under the “Forfeiture by Wrongdoing” doctrine, which the Supreme Court mentioned in Crawford v. Washington, 541 U.S. 36, 62, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177 (2004), as an exception to the Confrontation Clause’s requirements for the handling of testimonial hearsay. The Commonwealth’s response also addressed, in a separate section, appellant’s request to exclude what both the Commonwealth and appellant described as various “non-testimonial” statements.
At the beginning of the hearing on appellant’s motion in limine, the trial court acknowledged receipt of briefs by the parties and stated, “I have read the briefs.” Thus, the trial court clearly knew before the oral argument had even begun that the Commonwealth had consistently described the affidavit as “testimonial.” During his argument, appellant’s counsel said that he did not “see in the Commonwealth’s response that there’s any disagreement that those statements are, in fact, testimonial.” Appellant’s counsel then proceeded to explain why the two-pronged forfeiture by wrongdoing doctrine advocated by the Commonwealth was not applicable here. When the prosecutor interrupted to ask if only the affidavit was under discussion at that moment, the court answered, “I think we’re all agreeing that the testimonial part of it is what he’s arguing at the moment.”
When the prosecutor began his argument, the prosecutor agreed that the evidence would not show “some proof of intent to keep the victim from testifying, per se,” asking the court to apply a “two-pronged,” rather than the traditional “three-pronged” forfeiture by wrongdoing doctrine. At the conclusion of the argument, appellant and the trial court discussed whether the state-of-mind exception to the general prohibition *501 on the introduction of hearsay might allow the presentation of the affidavit to the jury for some limited purposes.
Eight days later, the trial court issued a letter opinion that, inter alia, denied appellant’s motion in limine to exclude the 2004 affidavit. In this letter, the court noted, “there is much confusion in the courts over the scope of the testimonial category of hearsay,” but Crawford v. Washington lists affidavits as an example of a type of testimonial statement. The court concluded, “[I]t is clear, and the Commonwealth does not dispute, that these statements do fall within the scope of Crawford.” The trial court then used the two-pronged forfeiture by wrongdoing doctrine advocated by the Commonwealth to rule that the affidavit was admissible for the truth of the matters asserted therein.
Given these proceedings, I believe that we must conclude that the Commonwealth conceded to appellant’s, and the trial court’s, characterization of the affidavit as testimonial hearsay. The prosecutor never argued that the affidavit was non-testimonial. Instead, he opted to argue that an exception to the Confrontation Clause applied, an exception that was relevant only if the affidavit was testimonial. Indeed, the Commonwealth’s response to the motion in limine labeled the affidavit “testimonial” and never called it “nontestimonial,” yet the response did discuss other statements that it labeled “nontestimonial.” As a result, the Commonwealth had the burden at trial to establish an exception that would allow the jury to hear the evidence, given the Confrontation Clause’s bar on the use of testimonial hearsay in criminal trials. The Commonwealth at trial relied on only one exception—a two-pronged forfeiture by wrongdoing doctrine. The trial court applied that doctrine as advocated by the Commonwealth and admitted the affidavit under what it believed to be an exception to the Confrontation Clause, an exception later struck down by the Supreme Court in Giles v. California, — U.S. -, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). In short, the trial court here took the very action recommended by the Commonwealth, applying the two-pronged forfeiture by *502 wrongdoing doctrine in the exact manner advocated by the prosecutor in both his briefing and his oral argument.
Given this posture and the fact finding that the trial court did and did not make in reaching this conclusion, I must respectfully disagree with the majority opinion’s application of the “right result/wrong reason” doctrine to this case. I would find that this doctrine does not apply here.
The Supreme Court of Virginia recently noted with approval the following explanation of this doctrine:
An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason. However,
[t]he rule does not always apply---- [T]he proper application of this rule does not include those cases where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court’s decision.
Harris v. Commonwealth, 39 Va.App. 670, 675-676, 576 S.E.2d 228, 231 (2003), Blackman v. Commonwealth, 45 Va.App. 633, 642-643, 613 S.E.2d 460, 465 (2005) (“an appellee may argue for the first time on appeal any legal ground in support of a judgment so long as it does not require new factual determinations.”) We agree with these holdings by the Court of Appeals.
Whitehead, 278 Va. at 115, 677 S.E.2d at 270. Here, I would find that the doctrine should not be applied because additional facts, beyond those that the trial court was asked to consider, must be reviewed in order to determine whether Mrs. Crawford’s affidavit was non-testimonial hearsay. Therefore, I believe that the majority opinion errs in its consideration of the Commonwealth’s new argument—that the affidavit is non-testimonial hearsay—on appeal.
The trial court rejected the grounds now advocated by the Commonwealth on appeal. As the majority points out, the trial court explicitly found that the affidavit was testimonial *503 hearsay. In doing so, the trial court implicitly rejected any factual findings upon which to base an argument that the affidavit was non-testimonial hearsay. The trial court was never asked to make any explicit findings of fact or consider the evidence regarding the creation or “primary purpose” of the affidavit, as the Commonwealth did not object to the characterization of the affidavit as testimonial hearsay. No evidence was specifically presented to address this issue. In addition, the evidence that was before the trial court, such as the fact that the affidavit was given under oath, supported the trial court’s finding that the affidavit was testimonial hearsay especially in light of the fact that the Commonwealth did not object to that finding. Thus, the right result/wrong reason analysis cannot be applied here, as the trial court rejected the argument that the evidence is non-testimonial hearsay and implicitly rejected factual findings that are necessary to conclude that the affidavit was non-testimonial hearsay.[21]
The majority opinion concedes that at least some affidavits are testimonial hearsay, but then attempts to distinguish affidavits that are not testimonial from those affidavits that are testimonial by arguing that the Court must examine the “primary purpose” for the creation of the document. However, the majority opinion fails to acknowledge that, in determining the “primary purpose” for the creation of the affidavit, the Court must consider the evidence and the facts surrounding the creation of the affidavit in order to establish such a purpose. Although the legal question of whether evidence is inadmissible testimonial hearsay may be reviewed de novo, as the majority opinion contends, the question presented in this case requires that various facts be determined to support the majority opinion’s assertion that “the primary purpose of the affidavit was not to ‘prove past events potentially relevant to later criminal prosecution.’ ”
*504 I believe that the primary purpose of the affidavit can only be discovered by examining the factual situation surrounding the creation of the affidavit. Here, the trial court found that the document at issue was an affidavit, but the trial court did not consider (and was not asked to consider) any evidence or circumstances regarding the creation of the affidavit. “[C]ases in which the party seeking affirmance failed to present the argument in the trial court, such that the trial court did not have an opportunity to rule on the argument, are not ‘proper cases’ for the application” of the “right result/wrong reason” doctrine. Whitehead, 278 Va. at 114, 677 S.E.2d at 270 (citing Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963)). Pursuant to the Supreme Court’s instructions in Whitehead, therefore, this Court should not apply the “right result/wrong reason” doctrine here, as addressing this question necessarily requires consideration of facts and evidence that were not presented to the trial court and upon which the trial court was never actually asked to rule. See Blackman, 45 Va.App. at 642-43, 613 S.E.2d at 465; see also Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999) (noting that appellate courts should not “recast” evidence to support an argument that was not made at trial).
In a footnote, the majority claims that appellant conceded during oral argument that the primary purpose for the affidavit was obtaining a protective order. I have two concerns with this basis for the majority opinion’s assumption that no new facts or evidence need be considered in applying the “right result/wrong reason” doctrine. First, the Commonwealth conceded the opposite position at trial when it effectively agreed with appellant that the affidavit was testimonial hearsay. Second, at oral argument, when asked by the Court sitting en banc whether appellant was “willing to concede” that the primary purpose for the affidavit was not a criminal prosecution, appellant’s counsel responded, “That’s not necessarily the case. We don’t know whether or not there may have been further, if the affidavit was to have been used in a further .... ” At this point, appellant’s counsel was asked another question by the Court, one suggesting that the burden of *505 proof regarding the primary purpose fell on appellant as the person who appealed this case. Appellant’s counsel then essentially conceded that the evidence, such as it existed in the record, established only that the affidavit was created in order to obtain the protective order. However, appellant was not asked to concede, and did not concede, that no new factual findings or additional evidence from outside the record were necessary to consider whether the trial court had reached the right result, but for the wrong reason. Cf. Whitehead, 278 Va. at 115, 677 S.E.2d at 270 (“Because the Commonwealth limited its method of proof at trial, Whitehead was not on notice to present evidence to rebut any other method of proof possible.”).
Because the trial court rejected the position now presented by the Commonwealth—that the affidavit was not testimonial—and because the trial court was not asked to make and did not explicitly make any factual findings that would support the Commonwealth’s new position on appeal, I would find that this appeal does not present an appropriate situation in which to apply the “right result/wrong reason” doctrine. This Court, therefore, should assume that the affidavit is testimonial hearsay.[22]
B. Testimonial Hearsay
While I do not believe it is appropriate for this Court to address the Commonwealth’s argument presented in this appeal, now claiming that the affidavit was actually non-testimonial hearsay, for the reasons stated supra, I find that I must address this issue because I believe that the majority opinion incorrectly concludes that the affidavit here is not testimonial hearsay. Based on the law as established by the United States Supreme Court, I must agree with the trial court, with *506 appellant, and with the trial prosecutor that this affidavit is testimonial hearsay.
1. The Definition of Testimonial Hearsay
The United States Supreme Court explained in Crawford v. Washington:
The text of the Confrontation Clause reflects this focus. It applies to “witnesses” against the accused—in other words, those who “bear testimony.” 2 N. Webster, An American Dictionary of the English Language (1828). “Testimony,” in turn, is typically “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.” Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
541 U.S. at 51, 124 S.Ct. at 1364 (brackets in original) (emphasis added). The Court listed “[v]arious formulations of this core class of ‘testimonial’ statements,” including affidavits, in that list. Id.
Two years later, the Supreme Court refined the definition of testimonial hearsay in Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which consolidated two criminal cases—Davis’s and Hershel Hammon’s. The Supreme Court found that the statement presented at Davis’s trial was not testimonial hearsay, but the affidavit presented at Hammon’s trial was testimonial. Id. at 828, 834, 126 S.Ct. at 2277. In comparing these two fact patterns, the Supreme Court developed a refinement of Crawford that is particularly relevant here, although it is overlooked by the majority opinion.
The statement involved in Dávis’s case was a recording of a 911 call. Michelle McCottry informed the 911 operator that Davis was assaulting her, and the operator began asking McCottry questions. Id. at 817-18, 126 S.Ct. at 2271. The *507 statement in Hammon’s case was an affidavit filled out by his wife at the request of the police after they arrived to investigate a reported assault. Id. at 819-20, 126 S.Ct. at 2272. As the Supreme Court explained, the question presented by these convictions was “which police interrogations produce testimony.” Id. The Court then answered this question:
Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Id. at 822, 126 S.Ct. at 2273-74 (footnote omitted).
The Court also explained in a footnote that “the absence of any interrogation” will not automatically define a statement as non-testimonial. Id. at 822 n. 1, 126 S.Ct. at 2274 n. 1. The Supreme Court noted in its discussion of Davis’s case that most cases applying the Confrontation Clause “involved testimonial statements of the most formal sort—sworn testimony in prior judicial proceedings or formal depositions under oath,” but concluded that “the English cases that were the progenitors of the Confrontation Clause did not limit the exclusionary rule to prior court testimony and formal depositions.” Id. at 826, 126 S.Ct. at 2276.
In considering the particular facts of Davis’s case, the Court noted as important the fact that McCottry faced “an ongoing emergency” and that the operator’s questions were necessary to resolve that emergency. Id. at 827, 126 S.Ct. at 2276. The Court then found that McCottry
*508 simply was not acting as a witness; she was not testifying. What she said was not “a weaker substitute for live testimony” at trial, United States v. Inadi, 475 U.S. 387, 394, 106 S.Ct. 1121, [1126,] 89 L.Ed.2d 390 (1986), like Lord Cob-ham’s statements in Raleigh’s Case, 2 How. St. Tr. 1 (1603), or Jane Dingler’s ex parte statements against her husband in King v. Dingler, 2 Leach 561, 168 Eng. Rep. 383 (1791), or Sylvia Crawford’s statement in Crawford [v. Washington]. In each of those cases, the ex parte actors and the evidentiary products of the ex parte communication aligned perfectly with their courtroom analogues. McCottry’s emergency statement does not. No “witness” goes into court to proclaim an emergency and seek help.
Id. at 828, 126 S.Ct. at 2277. The Court found McCottry’s statements to the 911 operator were not testimonial, but it also noted that later parts of the conversation might indeed be testimonial hearsay, but those later statements were not the subject of the appeal. Id. at 828-29, 126 S.Ct. at 2277-78.
The Supreme Court found Amy Hammon’s statement presented “a much easier task,” given the ruling in Crawford v. Washington. Id. at 829, 126 S.Ct. at 2278. The Court explained:
What we called the “striking resemblance” of the Crawford statement to civil-law ex parte examinations, 541 U.S., at 52, 124 S.Ct. 1354, [1364,] 158 L.Ed.2d 177, is shared by Amy’s statement here. Both declarants were actively separated from the defendant—officers forcibly prevented Hershel [Hammon] from participating in the interrogation. Both statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed. And both took place some time after the events described were over. Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial.
Id. at 830, 126 S.Ct. at 2278. The Court also pointed out, in comparing the Davis and Hammon statements, that
*509 The statements in Davis were taken when McCottry was alone, not only unprotected by police (as Amy Hammon was protected), but apparently in immediate danger from Davis. She was seeking aid, not telling a story about the past. McCottry’s present-tense statements showed immediacy; Amy’s narrative of past events was delivered at some remove in time from the danger she described.
Id. at 831-32, 126 S.Ct. at 2279.
2. Mrs. Crawford’s Affidavit
The affidavit here is certainly more similar to the affidavit in Hammon’s case than to the statements to the 911 operator in Davis’s case. Both Mrs. Crawford’s and Amy Hammon’s statements were made after the emergency had passed, unlike McCottry’s statement. Both Mrs. Crawford’s and Amy Hammon’s statements were in the form of an affidavit made without the presence of the accused, whereas McCottry’s statement was made while defendant was actually present. Both Mrs. Crawford’s and Amy Hammon’s statements described past criminal behavior, while McCottry’s statement described events as they were occurring. In addition, the affidavit here was specifically prepared for presentation in a courtroom, as was the affidavit in Melendez-Diaz v. Massachusetts, -U.S.-, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009), which was also found to violate the Confrontation Clause.
The majority argues that the affidavit here was part of a civil proceeding and that, therefore, it was not intended for “prosecution” and cannot be testimonial, pointing to the “primary purpose” language in Davis. However, this position ignores the context of the Supreme Court’s “primary purpose” language. As the discussion above illustrates, the Supreme Court was comparing two specific examples of hearsay, one in which the declarant clearly was not concerned about future prosecution, but instead was concerned about an immediate emergency. In the contrasted case involving Hammon, the statement was given to police officers, but the record does not indicate that it was prepared with the understanding that the statement would be presented at trial. The Supreme Court *510 stated that if the primary purpose is “to enable police assistance to meet an ongoing emergency,” 547 U.S. at 822, 126 S.Ct. at 2273, then the statement is not testimonial. Nothing in the record here indicates that Mrs. Crawford was under assault when she signed the affidavit. Therefore, her affidavit clearly does not fall into the non-testimonial category under this part of the Davis test. However, the Supreme Court also indicated that, if no ongoing emergency existed and “the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution,” then the statement is testimonial. Mrs. Crawford’s affidavit clearly falls into this category.[23]
Mrs. Crawford apparently gave her affidavit, at minimum, to obtain a preliminary protective order, under Code § 16.1— 253.1. The preliminary protective order that was issued indicates that, as part of an ex parte proceeding, the affidavit was presented to the court. The affidavit itself is typed on a sheet of paper with “31st Judicial District” and “Juvenile and Domestic Relations Court” printed at the top. The record does not indicate who typed the order or if the intake officer who notarized the affidavit asked questions of Mrs. Crawford to elicit the information. However, the affidavit is very organized and clearly is not a stream-of-consciousness statement like McCottry’s statement in Davis.
In the affidavit, Mrs. Crawford made a formal statement to prove that past criminal acts had occurred—exactly the type of statement that Crawford v. Washington and Davis prohibit as admission of testimonial hearsay.[24] Although not all of the *511 alleged acts taken by appellant contained in the affidavit are criminal, most of the acts clearly are criminal and “potentially relevant to later criminal prosecution.” Davis, 547 U.S. at 822, 126 S.Ct. at 2274. The incidents include battery (possibly malicious wounding), rape, destruction of private property, assault, and harassing telephone calls, all acts that are criminal under the Virginia Code. See Code §§ 18.2-51 (malicious wounding); 18.2-57 (assault and/or battery); 18.2-57.2 (assault and battery on a family member); 18.2-61 (rape); 18.2-187 (destruction of private property); 18.2-429 (calling with the intent to annoy). The affidavit also indicates that, the day before she signed the document, Mrs. Crawford spoke to a policeman about her problems with appellant and that the policeman “gave [her] several safety tips and told [her] to get a Protective Order.”[25] In addition, under Code § 16.1-253.1, the affidavit’s clear “primary purpose” was to prove past events so that the court would have sufficient evidence to issue a preliminary protective order.
The affidavit was explicitly prepared for presentation to a judge as part of an ex parte proceeding to obtain a protective order. It was an explicit substitute for testimony, the exact *512 type of evidence excluded by the Confrontation Clause. Pursuant to Code § 16.1-253.1, Mrs. Crawford’s affidavit in support of a protective order petition needed to establish that she had been subjected to “family abuse,” which includes “any act involving violence, force, or threat including, but not limited to, any forceful detention, which results in bodily injury or places one in reasonable apprehension of bodily injury.” Code § 16.1-228. Once a preliminary protective order here was granted, appellant faced conviction, at minimum, of a Class 1 misdemeanor for having any contact with his wife. See Code § 16.1-253.2 (listing the penalties for violation of a protective order, ranging from a Class 1 misdemeanor to a Class 6 felony). To say that such a proceeding is “entirely civil in nature” and effect, as the majority opinion does, is simply not accurate. While all the due process protections of a criminal proceeding do not apply to petitions for a protective order, obtaining a protective order requires that the petitioner establish “family abuse” and, once granted, a protective order allows an individual to use the criminal law to enforce and prosecute a violation of that order. Code § 16.1-253.2 (establishing criminal penalties for protective order violations). Therefore, for all of the reasons stated supra, I cannot conclude, as the majority opinion does, that the affidavit here— submitted to a JDR court as part of a petition for the issuance of a protective order—was not created in expectation of future use in court and was not “potentially relevant” to possible future criminal proceedings. See Davis, 547 U.S. at 822, 126 S.Ct. at 2274.
I would find that the prosecutor conceded that the affidavit was testimonial, which would include conceding any factual basis for finding that the affidavit was testimonial. Therefore, I believe this Court should not second-guess the trial court’s finding that the affidavit was testimonial. And, even if, as the majority contends, this Court can address the question of whether the affidavit is testimonial, I would continue to disagree with the majority and would find that the affidavit must be testimonial, given the United States Supreme Court’s *513 analysis and holdings in Crawford v. Washington and in Davis.
Thus, I would find that it was constitutional error for the trial court to admit the affidavit into evidence for the truth of the matter stated therein. The two-pronged forfeiture by wrongdoing doctrine, which the Commonwealth advocated at trial and initially on appeal, is not an exception that would allow admission of the affidavit in this particular case—although the trial court did not have the benefit of reading the United States Supreme Court’s decision in Giles prior to its ruling because this decision was not handed down until after appellant’s trial had concluded. See Giles, — U.S. at-, 128 S.Ct. at 2683-88, 171 L.Ed.2d at 495-501 (discussing the two-pronged version of forfeiture by wrongdoing and finding that this version of the doctrine is not an exception to the Confrontation Clause that permits introduction of testimonial hearsay at criminal trial).[26]
II. Harmless Error
Although I would find the trial court erred in admitting the affidavit for the truth of the matters asserted therein, I would conclude that this error was harmless, except in the case of the rape conviction. Thus, I concur with the final holding of the majority opinion that affirms all of the convictions here, with the exception of the holding regarding the rape conviction, from which I respectfully dissent.
The Supreme Court, in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, [828,] 17 L.Ed.2d 705 (1967), held that “before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.” As the Supreme Court stated in Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, [1436,] 89 L.Ed.2d 674 (1986), “an otherwise *514 valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.” See Neder v. United States, 527 U.S. 1, [15, 16,] 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999).
A court, when determining whether federal constitutional error is harmless, must consider several factors, including the importance of the tainted evidence in the prosecution’s case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and, of course, the overall strength of the prosecution’s case.
Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 124-25 (2000). In short, the Commonwealth bears the burden of proving that any constitutional error is harmless beyond a reasonable doubt. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828; Joyner v. Commonwealth, 192 Va. 471, 477, 65 S.E.2d 555, 558-59 (1951).
Appellant admitted that he shot Mrs. Crawford, but he claimed it was an accident. He told the police that he was attempting to kill himself while they were in Mrs. Crawford’s car. Mrs. Crawford supposedly reached for the gun, and it went off accidentally. The blood patterns in the car suggest that Mrs. Crawford was sitting in the driver’s seat and that someone sitting in the passenger’s seat shot her. Appellant also admitted that he then took his wife to the motel and left her there.
The affidavit was admitted to prove that appellant was violent towards Mrs. Crawford, rebutting his claim that he shot her accidentally. The affidavit described one incident in which appellant threw her against a door and also threw a glass at her. The affidavit described another incident during which appellant hit his wife three times with a belt and then forced her to have sexual intercourse with him. The affidavit also mentioned an incident that occurred while Mrs. Crawford and her parents attempted to take her things out of the marital home, when appellant threw a table.
*515 This affidavit was admitted without limitation. Therefore, the document was improperly admitted for the truth of the matters asserted within the affidavit, but it nevertheless was properly admitted for other purposes, such as evidence of the victim’s state of mind. See Hodges v. Commonwealth, 272 Va. 418, 436-37, 634 S.E.2d 680, 689-90 (2006) (discussing the state-of-mind exception to the general rule excluding hearsay evidence). During discussion of the motion in limine, appellant acknowledged that the Commonwealth offered the document as proof of Mrs. Crawford’s state of mind as well as for the truth of the matters asserted therein.[27]
I would find that the affidavit was properly admissible under the state-of-mind exception to the hearsay rule. See Elliot v. Commonwealth, 30 Va.App. 430, 437-38, 517 S.E.2d 271, 275 (1999) (discussing the state-of-mind exception to the hearsay rule). As the Court explained in Hanson v. Commonwealth, 14 Va.App. 173, 188-89, 416 S.E.2d 14, 23 (1992):
For the state of mind of the victim to be relevant to prove the state of mind of the accused, some nexus must exist which inferentially implicates the accused, such as by showing “previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant.”
(quoting United States v. Brown, 490 F.2d 758, 765-66 (D.C.Cir.1973)). The affidavit clearly showed previous threats that appellant had made, past incidents of violence by him, and generally expressed Mrs. Crawford’s fear of him. If the affidavit had been admitted solely for use as evidence of the victim’s state of mind, rather than also for the truth of the statements that it contained, then the trial court would not have committed error. Therefore, while this harmless error *516 analysis must consider any impermissible influence of the affidavit on the jury, we must be careful to also allow for the jury’s proper use of the document as evidence of the victim’s state of mind.
A. Rape Conviction
Although the jury could use the affidavit as evidence of Mrs. Crawford’s state of mind, I cannot find beyond a reasonable doubt that admission of the affidavit was harmless in relation to the rape conviction.
The affidavit did specifically allege that appellant had raped his wife only a few months prior to her murder, describing in detail an incident on August 14, 2004. As rape was the only crime with which appellant was charged that was specifically described and alleged by Mrs. Crawford in the affidavit, this document would have had more impact on the jury’s decision to convict appellant of rape than on the decision to convict him of the other charges.[28] See Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (“In making that determination [of harmless error beyond a reasonable doubt], the reviewing court must consider a host of factors, including the importance of the tainted evidence in the prosecution’s case----”); Young v. Commonwealth, 47 Va.App. 616, 634, 625 S.E.2d 691, 700 (2006) (noting that the evidence of other crimes that was improperly admitted included several robberies, the crime for which Young was on trial), rev’d on other grds., 273 Va. 528, 643 S.E.2d 491 (2007); Boney v. Commonwealth, 29 Va.App. 795, 801-02, 514 S.E.2d 810, 813 (1999) (discussing the factual similarity between the erroneously admitted evidence of Boney’s prior bad acts and the appealed convictions).
In addition, the Commonwealth’s evidence, which proved Mrs. Crawford and appellant had recently had sexual inter *517 course, did not prove when or where this act of sexual intercourse occurred, nor did it prove whether the act was under duress or was consensual. Mrs. Crawford had not sustained any injuries to her genitalia. The police did not find any sperm or bodily fluids on the bed where they found Mrs. Crawford’s body nor did they find any indication that the sexual intercourse had occurred in the car. None of the Commonwealth’s evidence proved the age of the sperm found in Mrs. Crawford’s vagina or elsewhere in her body. Appellant never confessed to having sexual intercourse with his wife, although he did admit that he shot her and took her to the motel room. The Commonwealth’s evidence did prove that Mrs. Crawford had talked to appellant the night before her murder and that she appeared happy when her parents saw her just after that conversation. She also called appellant twice the next morning. Appellant claimed the parties were attempting to reconcile.
While the evidence taken as a whole without the affidavit certainly creates a strong suspicion that appellant did in fact rape his wife, I cannot find that the introduction of the affidavit for the truth of the matter therein was harmless beyond a reasonable doubt on the rape conviction. Given the many questions regarding the sexual intercourse between appellant and Mrs. Crawford that remained unanswered by the Commonwealth’s evidence, I believe that the affidavit’s allegation that appellant previously raped his wife must have had a significant impact on the jury’s decision to convict appellant of rape.
B. The Remaining Convictions
I would find that the admission of the affidavit in relation to appellant’s other convictions, excluding the rape conviction, was harmless beyond a reasonable doubt. The affidavit did not specifically allege that appellant had abducted, attempted to kill, or stolen from his wife previously, nor that he had previously threatened her with a gun. The affidavit was not the only evidence of appellant’s previous violence. In addition, *518 appellant admitted that he shot his wife and that he took her to the motel room after shooting her.
Generally, the record contained many sources of information regarding appellant’s violence toward his wife. The affidavit, therefore, was merely cumulative of the other proof that rebutted appellant’s contention that he would not hurt his wife and actually intended to hurt himself. For example, the preliminary protective order itself, admitted without objection, stated that a court had previously found “evidence sufficient to establish probable cause that family abuse, including forceful detention, resulting in physical injury to [Mrs. Crawford] or placing [her] in reasonable apprehension of serious bodily injury,” had “recently occurred.” Mrs. Crawford’s father testified that appellant threw a table into the room and broke it when he accompanied his daughter to the marital home to remove her belongings. Her father also testified that appellant threatened his daughter. A police officer, who had responded to the couple’s home when Mrs. Crawford was moving out, testified that appellant’s manner was intimidating and overbearing and that Mrs. Crawford asked appellant if he was threatening her. Mrs. Crawford’s boss and a co-worker both testified about their knowledge of her fear of appellant. Her boss testified that he was not surprised to learn about the protective order against appellant, given the “history between them.”[29] Thus, the affidavit’s allegations of general violence and threats were merely cumulative of the other evidence presented by the Commonwealth.
In addition, appellant admitted that he shot his wife, although he claimed he shot her accidentally. However, appellant then covered up this “accident.” He threw both her cell phone and a box that had her blood on it out of the car. Rather than taking his wife to a hospital, he left her alone in a motel room in Charlottesville, Virginia, many miles from her home and family. If she was alive when appellant left her in that room, Mrs. Crawford would not have been able to move *519 or call anyone for help, according to the expert testimony. After leaving her alone and immobile in the motel room, appellant did not call someone and get help for Mrs. Crawford. Instead, he drove to Florida in her car to visit relatives whom he had not seen in many years and who did not know he was coming. He did not mention the “accident” to them, and he appeared happy and untroubled to them. In addition, he had purchased a gun just days before the murder of Mrs. Crawford.
In the context of this evidence, the incidents mentioned in the affidavit were cumulative evidence of appellant’s violent history. Some witnesses actually testified about incidents described in the document, such as appellant throwing a table. Given this record, I find any error in admitting the affidavit was harmless in relation to the murder.
This same evidence supports a finding that the admission of the affidavit was harmless in relation to the abduction with intent to defile[30] conviction, a predicate offense for the capital murder conviction.[31] Appellant admitted to the police in Flori *520 da that he took Mrs. Crawford to the motel and left her there alone after the shooting. At that point, according to the assistant medical examiner, Mrs. Crawford could not move her body due to the severing of her spine. Given appellant admitted that he shot her—and given her urgent need for medical attention—the evidence, independent of the affidavit, proved overwhelmingly that Mrs. Crawford certainly did not go willingly to the motel with appellant after he shot her. As strong evidence supported the inference that Mrs. Crawford did not want appellant to take her to Charlottesville,[32] the jury could properly find on this evidence alone that appellant abducted his wife when he put her in the back seat of the car after shooting her and took her to a motel room rather than to a hospital.
The evidence of appellant’s intent to defile Mrs. Crawford was also sufficiently strong, even without the affidavit. After he took her to the motel, the evidence proved that appellant completely undressed Mrs. Crawford and placed her on the *521 bed, as she was unable to move according to the medical expert. He then positioned her now totally nude body in a sexually suggestive manner and left her in the motel room in that position. This evidence clearly and sufficiently indicated an intention to defile at the time of the abduction, independent of any allegations in the affidavit.[33]
In addition, regarding the use of a firearm during the commission of murder conviction, the use of a firearm during the commission of an abduction conviction, and the grand larceny conviction, the affidavit contained no information directly relevant to these charges. The document did not mention guns or the vehicle. The evidence proved that appellant purchased a gun just prior to the killing, and he admitted that he had a gun on the day of the shooting. He was found in possession of the stolen vehicle and admitted in his statement to the police that he drove it to Florida. Clearly the affidavit did not improperly influence the jury on these charges.
Overall, the evidence, considered as a whole, did not overwhelmingly support the rape conviction—independent of the affidavit’s accusations of appellant’s previous rape of Mrs. Crawford. Given this record, and the clear accusation in the affidavit that appellant previously raped his wife, I cannot find that the admission of the affidavit for the truth of the matter therein was harmless in relation to the rape conviction beyond a reasonable doubt. However, I would find that the affidavit was harmless in relation to all of appellant’s other convictions, *522 as the affidavit was repetitive of other evidence in the record and since evidence independent of the affidavit supported the appropriateness of these convictions beyond a reasonable doubt.
III. Sufficiency
I concur with the majority opinion that the evidence was sufficient to convict appellant of the crimes with which he was charged. As discussed in the harmless error analysis supra, even excluding the affidavit, I would find the evidence was sufficient to convict appellant of these crimes, except for the rape conviction.[34] When the affidavit is considered together with the rest of the evidence presented at trial, as it must be in a sufficiency analysis, see Sprouse v. Commonwealth, 53 Va.App. 488, 493, 673 S.E.2d 481, 483 (2009), I would also find that a rational factfinder could conclude that the evidence was sufficient to convict appellant of rape.[35] Thus, I would reverse only the rape conviction and, rather than dismissing it, I would remand for a new trial, solely on the rape indictment, if the Commonwealth be so inclined. See Rankins v. Commonwealth, 31 Va.App. 352, 373, 523 S.E.2d 524, 534 (2000) (finding a Confrontation Clause error was not harmless and remanding for a new trial). However, I concur with the majority opinion’s conclusion that the remainder of the convictions should be affirmed, as the trial court’s error was harmless beyond a reasonable doubt and the evidence before the jury was sufficient to convict appellant of those crimes.
*523 CONCLUSION
In conclusion, I respectfully dissent from the majority’s decision to affirm appellant’s rape conviction, for the reasons stated supra. I concur in the majority’s overall conclusion that the remaining convictions should be affirmed, but for the reasons stated supra.

. The Commonwealth does not argue that the affidavit is admissible under some other evidence rule or exception to the Confrontation Clause’s bar on testimonial hearsay.

. It is interesting to note that the United States Supreme Court in Giles, which also considered the admissibility of an affidavit under the two-pronged forfeiture by wrongdoing doctrine, "accept[ed] without deciding” the concession that the affidavit was testimonial. Giles,-U.S. at-, 128 S.Ct. at 2682, 171 L.Ed.2d at 494.

. I believe that the following analysis discussing the facts regarding creation of the affidavit should have and would have been conducted by the trial court, with testimony or proffers to support these evidentiary findings, if this issue had been contested by the Commonwealth. An appellate court should review this type of evidentiary analysis, not conduct it. However, as the majority opinion has determined that we should address this issue, I feel obligated to address the flaws that I find in that analysis, to the extent that I can, based on the record before us.

. Even in protective order proceedings, such affidavits are admitted only as evidence to allow the issuance of a 14-day preliminary protec *511 tive order. For a permanent protective order (which lasts for two years in Virginia), the court must conduct a full hearing with the respondent present (or at least noticed) so that he or she can hear the evidence and defend against it. See Code § 16.1-253.1(B); Tsai v. Commonwealth, 51 Va.App. 649, 659 S.E.2d 594 (2008).

. In this case, we do not know the circumstances surrounding the creation of Mrs. Crawford’s affidavit. We do not know the functions or motivations of the "intake officer” who notarized the affidavit, and, therefore, we cannot compare this person’s purposes to the purposes of a police officer or a 911 operator, or someone else, a consideration that the United States Supreme Court addressed in Davis. 547 U.S. at 822, 126 S.Ct. at 2273. Therefore, it is very difficult to determine the "primary purpose” of the affidavit from the intake officer’s perspective. However, as the trial court found that the affidavit was testimonial, and the Commonwealth at trial conceded that the affidavit was testimonial hearsay, this Court should conclude the trial court made all appropriate factual findings to support that conclusion. See Harris v. Commonwealth, 133 Va. 700, 705, 112 S.E. 753, 754 (1922) (“The ruling[s] of the trial court are presumed to be correct, unless the contrary appears from the record.”).

. As the majority notes, the trial court here did not consider and was not asked to consider the third prong of the “traditional” forfeiture by wrongdoing doctrine—appellant’s intent to prevent the declarant from testifying. See Giles,-U.S. at-, 128 S.Ct. at 2684, 171 L.Ed.2d at 496. The applicability of that doctrine was never advocated by the Commonwealth in this case, at any level of these proceedings.

. Appellant did argue that some statements in the affidavit were too "remote” for the state-of-mind exception to apply or were irrelevant to Mrs. Crawford's state of mind. In response, the trial court redacted some content from the 2004 affidavit and completely excluded an earlier affidavit.

. Although the affidavit mentions that appellant placed a sofa against the Crawfords’ apartment door during one incident, it is doubtful that the jury would have perceived this act as an "abduction,” especially given the act of abduction that the jury was asked to consider.

. Appellant did not object to this conclusion by the witness.

. Under Fitzgerald v. Commonwealth, 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982), "defile” and “sexually molest” are "interchangeable within the meaning of” abduction with intent to defile.

. The capital murder indictment charged that appellant committed the premeditated murder of Mrs. Crawford while abducting her with the intent to defile her or while raping her. At trial, the jury was presented with Verdict Form No. A, which stated the choices before the juiy on this indictment as follows:
We, the jury, find the defendant, ANTHONY DALE CRAWFORD, guilty of the willful, deliberate and premeditated killing of Sarah Crawford in the commission of abduction with intent to defile Sarah Crawford and in the commission of the rape of Sarah Crawford. OR,
We, the juiy, find the defendant, ANTHONY DALE CRAWFORD, guilty of the willful, deliberate and premeditated killing of Sarah Crawford in the commission of abduction with intent to defile Sarah Crawford. OR,
We, the jury, find the defendant, ANTHONY DALE CRAWFORD, guilty of the willful, deliberate and premeditated killing of Sarah Crawford in the commission of rape of Sarah Crawford. OR,
*520 We, the jury find the defendant, ANTHONY DALE CRAWFORD, guilty of first degree murder of Sarah Crawford. OR,
We, the jury, find the defendant, ANTHONY DALE CRAWFORD, guilty of the second degree murder of Sarah Crawford. OR,
We, the jury, find the defendant, ANTHONY DALE CRAWFORD, guilty of the second degree felony homicide of Sarah Crawford. OR,
We, the jury, find the defendant, ANTHONY DALE CRAWFORD, not guilty.
Each of these findings was followed by a line for the signature of the jury foreman. The jury foreman signed under the first finding, indicating that the jury found appellant guilty of committipg the premeditated murder of Mrs. Crawford while committing both abduction with the intent to defile and rape. Thus, the juiy clearly made the factual finding that appellant committed capital murder based on the predicate offense of abduction with intent to defile as well as on the predicate offense of rape. Therefore, on appeal, if the trial court's error was harmless in relation to either predicate offense, this Court may affirm appellant’s capital murder conviction.

. The medical examiner testified that Mrs. Crawford could have lived for an hour after she was shot. Appellant has never argued that Mrs. Crawford was already dead when he drove to the motel.

. This evidence of how appellant disrobed, placed, and positioned Mrs. Crawford in the motel room is directly relevant to the abduction with intent to defile charge, as appellant was still in the process of abducting her as he disrobed her and placed her in a provocative, sexually suggestive position—the position in which he left her. However, this evidence was not directly relevant to the rape conviction because the record does not indicate when or where the sexual intercourse between appellant and Mrs. Crawford occurred. The Commonwealth never proved whether the sexual intercourse occurred in the motel room or somewhere else, and the Commonwealth did not prove whether the sexual intercourse occurred before the shooting, prior to the abduction, or after appellant's rental of the motel room.

. On appeal, appellant challenged the sufficiency of the evidence supporting only the abduction with intent to defile conviction and the rape conviction. Therefore, the question of whether the evidence was sufficient to support his other convictions was not presented to this Court.

. In oral argument before this Court on rehearing en banc, appellant's counsel conceded—unlike at oral argument before the panel—that, when the affidavit is considered for the truth of the matter therein along with the other evidence admitted at trial, the evidence is sufficient for a jury to convict appellant of both rape and abduction with intent to defile. However, appellant continued to argue that the admission of the affidavit was error, was not harmless error, and, therefore, the convictions must still be reversed.